H. E. CAMPBELL et al., Respondents, v. R. F. BULLER,
Appellant.

Kansas City Court of Appeals, December 20, 1888.

1. **Action :** SUIT UPON CONTRACT IN THE ALTERNATIVE : CASE
ADJUDGED. Where, as in this case, a windmill was sold to defend-
ant to be paid for either by his note maturing December 1, 1886,
with interest at eight per cent. per annum from date of the erection
of the windmill ; or in case defendant refused to execute and
deliver the note, the whole purchase price should then be due.
*Held* that plaintiff was entitled to sue at once upon refusal to
deliver a note for the whole purchase price with six per cent. interest
from the date when the windmill was erected, etc.

2. **Practice :** BILL OF EXCEPTIONS : WHEN NOT PURPORTING TO CON-
TAIN ALL THE EVIDENCE. The bill of exceptions in this case does
not assume to contain all the evidence that was introduced at the
trial. In such cases this court will presume that evidence tending
to prove the issues and facts submitted in proper instructions was
introduced at the trial.

3. ———— : MOTION FOR NEW TRIAL : WHEN BASED UPON GROUND OF
SURPRISE AT THE TRIAL : AFFIDAVIT OF MERITS. Where a motion
for new trial is based upon the ground of surprise at the trial, the
statement is required in the affidavit in support of such motion,
that the verdict was unjust and that defendant had a meritorious
defense. (*Culbertson v. Hill*, 87 Mo. 553).

*Appeal from Jasper Circuit Court.*—HON. M. G.
McGREGOR, Judge.

AFFIRMED (upon condition of *remittitur*).

The case is stated in the opinion.

*H. H. Harding*, for the appellant.

(1) The first instruction given on the part of the
plaintiffs told the jury that if they found that the wind-
mill was put up and in running order by plaintiffs
according to contract, and defendant refused to give his
note, they should find for the plaintiffs " and assess the
damages at one hundred and fifty dollars and interest

at eight per cent. from the time when it was so put up,"
thus fixing the amount of the recovery and assessing
the damages in fact, which was a clear invasion of the
province of the jury and a fatal error. *Cates v. Nickell*,
42 Mo. 169 ; R. S. sec. 3634. The court might just as
well have instructed the jury that if they found that
the plaintiffs had fulfilled their contract they should
say so in their verdict and it would count up the amount
of the damages and save them the trouble. Besides the
mill might have been put up according to contract and
broken down completely the next day and plaintiffs
refused even to attempt to repair it and yet according
to this instruction they would have been entitled to a
full recovery. (2) The plaintiffs' second instruction is
manifestly erroneous. It was nowhere alleged in the
pleadings nor was there any evidence tending to show
that the failure of the machinery was caused by any
neglect or want of proper care in its management, and
any such an instruction could only mislead and confuse
the jury. *Camp v. Heelan*, 43 Mo. 591 ; *Dailey v.
Huston*, 58 Mo. 361, 368, 369 ; *Doebling v. Loos*, 45
Mo. 150. (3) The plaintiffs' third instruction is sub-
ject to the same objection, that there was no issue
upon which to predicate it. It is not alleged either in
the petition nor in the replication that the breaking of
the pump was caused by the refusal of defendant's ser-
vant to dig the trench below the frost line. *Camp v.
Heelan, supra*. (4) And the instruction that was
altered by the court and given of its own motion was
equally erroneous for the same reasons. (5) The court
ought to have given instruction number three asked for
by the defendant. There was evidence in support of
the allegation that the machinery was intrinsically
defective and never would and never did work properly
and that defendant had suffered great loss and incon-
venience thereby, and he was entitled to have that
question fully and fairly presented to the jury. If, as a
matter of fact, the pump was so defective that it would
not run for a whole winter and the defendant had to

hire extra hands to water his stock, it would be a monstrous injustice to compel him to pay, not only full price for the defective pump, but also interest on it while it was standing still. *Ridens v. Ridens*, 29 Mo. 470. (6) The defendant's motion for a new trial ought to have been sustained, not only on account of the errors in the instructions, but also on the ground of surprise and on the affidavit of newly-discovered evidence. If the issue had been raised (as it might have been in the replication), as to the alleged refusal of George Meredith to dig the ditch to a proper depth, then defendant would properly be held to have prepared himself to meet it, but as that was not done and the matter was sprung for the first time in the midst of the trial, and the case was made to turn upon the point, the court ought to have given defendant an opportunity to get in his rebutting testimony. Otherwise the rules of pleading might as well be abolished. *Bryce v. Morey*, 40 Mo. 106 ; R. S., sec. 3704.

*Thomas Hackney*, for the respondents.

(1) The objections urged by appellant against the first instruction given are clearly untenable. If plaintiffs sold the mill under the contract, and put it up in good running order and fully complied with the terms of the written contract and defendant refused to give his note, then plaintiffs were entitled to recover the contract price with interest ; and the instruction was proper. Sedgwick Meas. Dam. [2 Ed.] 199, 202. (2) The second instruction was proper under the evidence—though the evidence on this point is purposely abbreviated by appellant in his abstract. Even if there had been no evidence on this point to support this instruction still the instruction, could not prejudice appellant. All that respondents were required to do under their written contract to entitle them to their money was to put up the mill in good running order. They did not warrant the mill to run at all events, but simply warranted for one year from its erection against

winds that do not unroof buildings, and agreed to supply any defective parts during one year when notified. The instruction simply required of respondents more than was necessary to entitle them to a verdict, and could in no wise prejudice appellant. *Wright v. McPike*, 70 Mo. 176; *Gaty v. Sack*, 19 Mo. App. 477. (3) Appellant is in no position to complain of the action of the trial court in giving the instructions asked exonerating respondents from any blame if the trench for the supply-pipe was not dug deep enough by appellant's servant. True, nothing appears in the petition or replication as to such failure or refusal, and true it is that the answer is equally silent as to the supply-pipe not having been placed below the frost-line, or deep enough in the ground. The answer contained no general denial and the only objection made therein as to the manner in which the machinery was put up is that the mill was not placed perpendicularly above the pump. The evidence that the pipe was not placed below the frost-line was objected to by the respondents when offered by appellant on the trial, but being admitted over their objection, the respondents also introduced the evidence on that point in their favor. The appellant also asked an instruction based on so much of this evidence as he deemed in his favor, and having given him what he asked the court simply acted equally fair with respondents and gave an instruction on their part of the testimony on this point. (4) If error was committed by the trial court in this regard it was committed on the invitation of defendant and he cannot be heard to complain. *McGonigle v. Dougherty*, 71 Mo. 259; *Holmes v. Braidwood*, 82 Mo. 617; *Smith v. Culligan*, 74 Mo. 389. The other instruction was covered by those already given. (5) The affidavit of surprise accompanying defendant's motion for a new trial is not sufficient. There is no statement that the verdict is unjust, or that defendant has merits. *Culbertson v. Hill*, 87 Mo. 526.

RAMSAY, J.—Plaintiff's petition is in words and figures following : " Plaintiffs state that on the twenty-seventh day of November, 1885, plaintiffs were partners doing business under the firm name and style of H. E. Campbell & Co. and that on said day they sold and delivered to the defendant one number two, ten foot windmill and tower complete at the price of one hundred dollars ; one force pump air chamber threeway, cock and brass cylinder for twenty-five dollars ; one reservoir tank, round, size six feet bottom, four feet square, at twenty dollars, and twenty feet well pipe and rods at twenty-five cents per foot, aggregating the sum of one hundred and fifty dollars, for which defendant, by his agreement in writing herewith filed, promised, when said mill was up and in good running order, to execute to plaintiffs by their said firm name his promissory note for the said sum of one hundred and fifty dollars, payable to plaintiffs, said firm due December 1, 1886, with eight per cent. interest payable annually ; that said mill was put up and in good running order on the third day of December, 1885, and the execution and delivery of said note was demanded of defendant and refused, and defendant has ever since refused and still refuses to execute said note, and has refused and still refuses to pay said sum ; that by the terms of ssid agreement it was provided that in case defendant failed to execute said note then the said sum shall then and on said failure be due ; that plaintiffs have fully performed their part of said agreement and the said sum is now due and remains wholly unpaid. Wherefore they ask judgment against defendant for the sum of one hundred and fifty dollars, with eight per cent. interest thereon from the third day of December, 1885, and for costs." The defendant's answer is in the following words, omitting caption and signature : " Further answering defendant says that the said windmill was expressly warranted to be well made and of good materials, and to do good work, and that plaintiffs agreed that if any part thereof proved defective within one year they would replace it upon

notice, and that the said windmill was not well put up, but on the contrary was not set perpendicularly above the pump, in consequence of which it never worked properly, and in addition to that the pump was worthless and constantly out of repair and broken, so as to be useless to defendant, and the plaintiffs wholly failed and neglected and refused to replace it, though often requested, to defendant's damage in the sum of one hundred and fifty dollars, for which he asks judgment against plaintiffs." Plaintiffs, replication consisted of a general denial. At the trial plaintiffs read in evidence the contract, declared on, which was as follows: "Messrs. H. E. Campbell & Co. Please ship to me on or before December 3, 1885, at your earliest convenience, to Carthage, via Missouri Pacific Railroad, the following list of articles and erect same as soon as you can at prices opposite each: 1 No. 2 10-foot windmill and tower complete, $100.00; 1 force pump air chamber 3 and brass cylinders, $25.00; 1 reservoir tank, round, 6 ft. bottom, 4 ft. stave. $20.00; 20 feet well pipe and rods, 25c. per foot, am't used, $5.00; Total, $150.00. When the windmill is up and in good running order, I will pay H. E. Campbell & Co., or order, my note for $150.00 due on or before December 1, 1886, payable at the Bank of Carthage, Carthage, Mo., interest eight per cent., payable annually from its erection, failure to execute notes as above agreed makes whole amount due. I agree to assist machanics and board him or them while putting up work, do all digging, and I am to furnish four anchor posts and plank for well platform; reserving, however, the benefit of the warranty hereon endorsed. R. F. Buller." "Warranty: This windmill is warranted for one year from its erection against winds that do not unroof buildings, and any piece of the windmill proving defective during said year will be shipped to buyer free of charge by giving us notice. Failure to take proper care of said windmill renders above warranty null and void. H. E. Campbell & Co." Also offered evidence tending to show that they put up the

windmill and pump according to the contract and left it in running order ; that a short time afterwards they were notified by defendant that it would not work and they went out and found the supply-pipe was frozen up and had bursted ; that they took out the damaged part and put in a new piece ; that some time after that they were again notified, they found the bottom of the pump broken off and repaired it ; also that plaintiffs had several times requested defendant to give plaintiffs his note, but that he refused on the ground that the pump was defective and had never worked properly. The defendant introduced evidence tending to show that the pump was so badly put up and so defective in construction that it never had worked properly ; that on two occasions notice had been given to plaintiffs' and though plaintiffs repaired it, it soon failed and defendant was deprived of its use and expended money to get it repaired ; that it still failing to work, defendant requested plaintiffs to take it away. Also introduced evidence tending to show that a windmill pump was not properly put up unless the supply-pipe was below the frost-line, that the pipe in the one in suit had frozen, etc. Plaintiffs in rebuttal offered evidence tending to show that the supply-pipe of the pump was placed too near the surface of the ground owing to the refusal of one George Meredith, who was a servant of defendant, to dig the trenches deep enough ; that plaintiffs requested said Meredith to dig the trench deeper, which he refused to do, and that the reason the pump did not work during the winter was because the supply-pipe was not placed deep enough in the ground to prevent freezing.

For plaintiffs the court instructed :

"1. The court instructs the jury that if they find from the evidence that plaintiffs composing the firm of H. E. Campbell & Co., sold and delivered to the defendant the windmill and force pump and other articles mentioned in plaintiffs' petition under the written contract read in evidence, and placed the said mill and pump on the farm of defendant, and the same were put up in

good running order, then by the terms of said contract defendant agreed to execute his note to plaintiffs for the sum of one hundred and fifty dollars, payable December, 1886, with interest at eight per cent. per annum; and if you find from the evidence that plaintiffs complied with said contract on their part, and that defendant neglected or refused to execute said note on his part, the jury should find the issues for the plaintiffs and assess their damages at the sum of one hundred and fifty dollars, together with interest at eight per cent. from the time said mill and pump were put up in good running order by plaintiffs.

"2. The court instructs the jury that if the windmill and pump were put up in good running order by plaintiffs on defendant's farm, and after being so put up defendant failed and neglected to use proper care in looking after such windmill and pump, then plaintiffs are not responsible for any failure of the pump or windmill to work, occasioned by such failure or negligence by defendant.

"3. By the terms of plaintiffs' contract with defendant, the defendant was required to dig the trenches in which to lay the pipes, and if the person or persons employed by defendant to dig said trenches when requested by the plaintiffs to dig said trenches, below the line of frost, refused to dig the same any deeper, then the plaintiffs were not required to dig the same, and are not to be held responsible for a failure of the machinery to work on account of the trenches not being dug deeper."

And for defendant as follows:

"4. The burden of proof is upon the plaintiffs to show to the jury by a greater weight or preponderance of evidence that they complied with their contract in putting up the mill and pump in good running order.

"5. The court instructs the jury that if they believe from the evidence that said windmill and pump were not erected and placed in good running order and that plaintiffs did not supply the defects upon notice,

or cause the same to be put in good running order, then the jury may deduct from plaintiffs' claim whatever amount they may believe from the evidence defendant was damaged by reason of such failure of plaintiffs to put said mill in good running order."

The following instruction was asked by defendant and the parts in brackets added by the court: "6. By the terms of the contract read in evidence the plaintiffs were bound to set up the windmill and pump in good running order, including the placing of the pipe below the frost-line so that the same would not freeze in the winter, and if they believe from the evidence that it was so badly put up it failed to work properly and in such manner as it would have worked if it had been properly put up, then the jury should deduct from the plaintiffs' claim whatever amount of damage they may believe from the evidence the defendant sustained by reason of the failure of the said pump to work properly, [unless such failure of plaintiffs and said damages were occasioned by the refusal of the defendant or his servants to dig the trenches the proper depth after plaintiffs had requested that they be dug deeper]."

The verdict being for plaintiffs, the defendant moved for a new trial on account of alleged errors in giving and refusing instructions and on the ground that defendant was surprised by the evidence of plaintiff at the trial which tended to show that defendant's servant Meredith refused to do the digging required to place the supply pipe of the pump below freezing point. The motion was supported by affidavits of Meredith and one McLoflin. Defendant's motion for a new trial being overruled he brings the cause by appeal to this court.

I.   Plaintiff's first instruction submitted to the jury an erroneous measure of damages. The suit is upon the contract and not upon the note mentioned in it. The promise of the defendant, for an alleged violation and breach of which suit was brought, was : " When the windmill is up and in good running order, I will pay H. E. Campbell & Co., or order, my note for one hundred

and fifty dollars, due on or before December 1, 1886, payable at the Bank of Carthage, Carthage, Mo., interest eight per cent. payable annually from its erection, failure to execute notes as above agreed makes whole amount due." The petition, after the proper allegations of performance upon plaintiff's part, continued: "and the execution and delivery of said note was demanded of defendant and refused, and defendant has ever since refused and still refuses to execute said note, and has refused and still refuses to pay said sum; that by the terms of said agreement it was provided that in case defendant failed to execute said note then the said sum shall then and on said failure be due." Under the language of the contract, we think there can be no question that the windmill was sold to defendant to be paid for in one of two different ways, that is to say, by his note executed and delivered, as soon as the windmill was up in good running order, said note to fall due December 1, 1886, and to draw interest at eight per cent. per annum from date of the erection of the windmill, or, in case defendant refused to execute and deliver the note the whole amount, viz., the purchase price, one hundred and fifty dollars, should then be due. It will be noted that the contract does not fix any rate of interest that the purchase price should draw, if it became due at date of the erection of the windmill by reason of defendant's failure to execute note. Plaintiffs could have sued immediately for such sum, and the fact that suit was not instituted until after the date the note contracted for might have run, does not affect or change the cause of action. The suit is still for the one hundred and fifty dollars due to plaintiffs from the date the windmill was erected and left in good running order and no rate of interest being agreed upon, under section 2723, Revised Statutes, plaintiffs, if entitled to recover the purchase price of the windmill or any part of it, should only be allowed interest thereon at six per cent. from the date the amount of their recovery became due.

II. The bill of exceptions in the case does not assume to contain all the evidence that was introduced at the trial, and it is evident that it was not prepared by appellant with reference to rule 9, of this court. The bill of exceptions should either set forth all the evidence which was introduced at the trial, or under this rule, it should in some manner appear that the contention that there was no evidence tending to prove a fact in issue, was made in the court below, and by it passed upon, so as to enable the respondent to prepare a bill of exceptions containing the whole of the evidence supposed by him to be applicable to such fact or issue. When this is not done, but the bill is in form like the one in this suit, where it does not specially appear that this contention was proved below, this court will presume that evidence tending to prove the issues and facts submitted in proper instructions was introduced on the trial. This will preclude a consideration of the objections here urged to the second instruction given on behalf of plaintiff. We find no error in the instructions given other than hereinbefore expressed.

III. There was no error in overruling defendant's motion for a new trial, so far as the ground of surprise and newly-discovered evidence was concerned. Defendant's affidavit in support of his application for a new trial failed to state that the *verdict was unjust* and that defendant had a meritorious defense. This statement seems to be required in the affidavit in support of such motions when based upon the ground of surprise at the trial. *Meechum v. Judy*, 4 Mo. 361 ; *Culbertson v. Hill*, 87 Mo. 553.

The respondents will be permitted, within fifteen days of this date, to enter a *remittitur* of two per cent. of the interest by them recovered, in which case the judgment will stand affirmed. In the event of a failure upon respondents' part to enter such *remittitur* the judgment is reversed and cause remanded. All concur.